**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRECISION OPTICAL TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Civil Action No.<br><br>ECF CASE<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>JURY TRIAL DEMANDED |

Plaintiff Precision Optical Technologies, Inc. ("Precision" or "Plaintiff"), by and through its attorneys, Fox Rothschild LLP, for its Complaint against defendant Cisco Systems, Inc. ("Cisco" or "Defendant"), alleges, on knowledge as to its own actions and otherwise upon information and belief, as follows:

**NATURE OF ACTION**

1. This is an action for declaratory judgment concerning Precision's sale of optical networking equipment, specifically pluggable optical transceivers, that is offered as compatible to and fully operational when used with other networking devices, *e.g.* network switches and routers, including those manufactured by Cisco as well as other manufacturers.

2. Cisco programmed its devices to require certain information to be coded into any devices that are connected to them to maintain the pluggable transceivers' full functionality. All Cisco branded pluggable transceivers include this information. Without this information being present in the pluggable transceivers' memory, these devices often operate at reduced functionality or do not function at all. Precision includes this information in its pluggable networking products

to ensure their full functionality and compatibility with its customers' Cisco networking equipment.

3. Despite the functional nature of the coded information, Cisco has alleged in written demands, with threats of legal action, that the use of such required information coded into Precision's products improperly uses proprietary information and protectable trademarks belonging to Cisco.

4. Precision seeks a declaration that, contrary to Cisco's allegations, the required coding information is functional in nature and has not acquired secondary meaning, and that Precision's manufacture and sale of its products using the required coding information is functional, is not trademark use, does not infringe, does not dilute, does not tarnish, does not mislead, does not unfairly compete, and does not result in any likelihood of consumer confusion.

5. Precision further seeks a declaration that, contrary to Cisco's allegations, Precision has not engaged in, and is not engaging in, unfair business practices in violation of New York General Business Law § 349.

**JURISDICTION AND VENUE**

6. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. § 1051 *et seq*.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 15 U.S.C. § 1121(a), as Precision's claims arise under the laws of the United States, namely, the Lanham Act and Declaratory Judgment Act.

8. The Court has personal jurisdiction over Cisco by virtue of Cisco's specific and continuous contacts in this District and the State of New York. Specifically, Cisco has in the past conducted, and does presently conduct, business in this District by marketing, promoting,

advertising, offering for sale products and services, and distributing products either through wholesalers or retailers or direct to consumers. Cisco has purposefully and voluntarily placed its networking products, including, but not limited to, its optics and transceivers and other devices that are compatible with Precision's products, into the stream of commerce with the expectation that businesses and consumers in this District and in the State of New York will purchase such products. Additionally, Cisco offers five physical office locations within the state of New York, including offices in this District in Pittsford, New York and Amherst, New York and its newest "smart" office in New York City, which it promotes directly on its website.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because both parties actively market their products in this District. Additionally, the acts Precision seeks declaratory judgment on and which Cisco complains of in its letters to Precision occurred within this district.

## PARTIES

10. Plaintiff Precision is a corporation organized and existing under the laws of the state of New York, having its principal place of business at 2245 Brighton-Henrietta, Townline Road, Rochester, New York 14623.

11. Defendant Cisco is a corporation organized and existing under the laws of Delaware, having its principal place of business at 300 East Tasman Drive, San Jose, CA 95134.

## FACTUAL BACKGROUND

### Precision's Business and Products

12. Precision is a system engineering and integration company focused on optical transceivers and related active/passive optical components.

13. Since its incorporation in 2011, Precision has become a globally recognized premier supplier of such products and related optical networking equipment. Precision provides comprehensive networking engineering expertise and customized solutions for a wide range of network systems.

14. Precision has built a reputation in the industry as a reliable source for high-quality products and responsive, technical support services available to all Precision customers.

15. All of Precision's products have consistently been offered, sold, and promoted under various trademarks, including its federally registered PRECISION OPTICAL TRANSCEIVERS trademarks and its PRECISION OPTICAL TECHNOLOGIES trademarks currently the subject of pending applications with the United States Patent and Trademark Office (collectively, the "Precision Marks").

16. For over a decade, Precision's products, including its well-known and reputable transceiver products, have been and are being sold and marketed under its own brand through the continuous use of the Precision Marks.

17. Precision's distinctive branding and packaging materials make clear to its customers that their products are genuine Precision-branded products. Examples of Precision's branding on pluggable transceivers are shown below:






18. Precision is also well-known in the industry for providing an extensive network of direct engineering and sales support worldwide that assists in providing comprehensive solutions

for Precision's customers who are both large and small with a wide variety and mix of legacy and new network equipment. Precision's transceivers must operate within that mix of network equipment to meet customer's expectations.

19. Precision is an affiliate member of the Storage Networking Industry Association's ("SNIA") Small Form Factor ("SFF") Technology Affiliate ("TA") Technical Work Group ("TWG"). The SFF TA TWG produces specifications to standardize various aspects of networking technology as it relates to pluggable transceivers. For example, SNIA's SFF TA TWG Specification for Management Interface for SFP+, designated SFF-8472, is currently in Revision 12.4. *See* Exhibit A, SFF-8472 Specification. The SFF-8472 defines and governs a set of standards that are applicable to a class of pluggable transceivers referred to as small form-factor pluggable ("SFP") transceivers. As an affiliate member, Precision has no voting rights but adheres to the standards produced by the SFF TA TWG. The Precision's SFP transceivers at issue in this proceeding are designed and manufactured in accordance with the SFF-8472 standard. Other SNIA standards are also applicable to various particular classes of pluggable transceivers.

**Cisco's Business Practices**

20. On information and belief, Cisco offers technology innovations for networking, security, and cloud management in various industries. Its products and services are marketed under its federally registered CISCO mark.

21. Cisco is a voting member of the SNIA SFF TA TWG.

22. As such, Cisco's products adhere to the SFF-8472 specification as it relates to SFP transceivers and the standardization of their use in SFF-8472 compliant routers and switches.

23. On information and belief, in or around 2014, Cisco programmed the software in its networking devices to require certain information for transceivers to have optimal and full

compatibility and operations when plugged into Cisco's networking products, such as a switch or router. That information currently includes the use of Cisco's Common Language Equipment Identifier ("CLEI") codes, its "CISCO" vendor code prefix, and a MD5 hash (collectively, the "Required Codes").

24. Prior to approximately 2014, Cisco did not require the use of the "CISCO" vendor code prefix for pluggable transceivers to fully function in Cisco switches and routers. However, the functionality of the SFP transceivers was still tied to the presence of the MD5 hash and the user-accessible EEPROM block that includes the CLEI code.

25. Cisco has dozens of designated router and switch product lines and each product line may have any number of individual product variants.

26. Furthermore, the software configuration utilized in any particular product variant may differ depending on the implementation demanded by the customer.

27. There are thousands of potential configurations for Cisco's networking products that utilize pluggable transceivers.

28. To ensure optimal performance and compatibility with customers' Cisco networking equipment, Precision has been encoding its transceivers with the Required Codes.

29. Precision's customers rely on Precision's use of the Required Codes in its transceivers when plugging them into Cisco's networking devices for full compatibility across hardware and software revisions and upgrades.

**<u>Cisco's Allegations Against Precision</u>**

30. There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

31. On June 7, 2023, Precision received a letter from Cisco objecting to Plaintiff's alleged use of the Required Codes, namely, its CLEI codes, its "CISCO" vendor code prefix, and its MD5 hash, in a trademark manner, and claiming that this alleged use constitutes trademark infringement and unfair business practice.

32. In the June 7, 2023 letter, Cisco begins by recognizing that Precision and other transceiver vendors are "free to sell transceivers that […] may be functionally similar to Cisco transceivers and that can be used with Cisco networking products." However, it alleges that Precision's transceivers use the Required Codes and, in doing so, Precision misleads purchasers into believing the transceivers purchased are manufactured by Cisco or with Cisco's authority.

33. In its June 7, 2023 letter, Cisco demands that Precision cease all use of the Required Codes. Attached hereto as Exhibit B is a true and correct copy of Cisco's June 7, 2023 cease and desist letter.

34. On July 7, 2023, Plaintiff responded to Cisco's initial demand letter and confirmed that Precision sells its transceivers and all Precision products under its own brand, with its own distinctive branded product packaging materials and support services, all of which make clear to its customers that its products are Precision products and not Cisco products. Furthermore, as explained in Precision's response letter, Cisco's accusations of infringement and unfair business practices are without basis because Precision's use of the Required Codes are solely in a functional manner, not as a source identifier. Specifically, Precision does not use the Required Codes as a designation of source of goods or services, but rather to maintain compatibility with Cisco's products, as Cisco intended the Required Codes to be used. Because customers do not view Precision's use of the Required Codes as a trademark, the designation is not likely to cause

consumer confusion and causes no harm to Cisco under the Lanham Act. Attached hereto as Exhibit C is a true and correct copy of Precision's July 7, 2023 response letter.

35. Precision's use of the Required Codes is merely of a functional purpose, specifically for the interoperability between its firmware and Cisco's networking devices.

36. Following Cisco's second demand letter, sent on July 28, 2023, a true and correct copy attached hereto as Exhibit D, and the parties' conference call on August 28, 2023, Precision provided a letter dated September 6, 2023, in which it confirmed three representative examples in which a Precision transceiver could not achieve compatibility with Cisco's platforms and software because it did not use the Required Codes. Although there are many other examples of such incompatibility, Precision's three examples demonstrated that the transceivers did not put out any optical power and would not support a link if either the CLEI Codes, the "CISCO" vendor code prefix, or the MD5 hash was missing. Inversely, Precision confirmed that including all three Required Codes in those exact three Precision transceivers allowed them to function optimally. Attached hereto as Exhibit E is a true and correct copy of Precision's September 6, 2023 letter.

37. On February 9, 2024, a full five months after receiving Precision's previous correspondence, Cisco responded in a letter that claimed Cisco's engineers had tested Precision's claims with equivalent devices and found that if "the user enters the 'service unsupported-transceiver' command, [then] the generic transceiver is then recognized and functions on the device." Attached hereto as Exhibit F is a true and correct copy of Cisco's February 9, 2024 letter.

38. For the vast majority of Cisco products, the "service unsupported-transceiver" command is an undocumented command that is hidden from users. Precision is only aware of one single product for which the command is documented, the Cisco Nexus 3000 Series and Cisco

Nexus 9000 and only for software version 7 and higher. Lower versions of the software do not include any documentation of the command.

39. Cisco's own support community forums provide documented examples demonstrating that the use of the "service unsupported-transceiver" command is not a universal fix and is inconsistently implemented for the software compatibility issue Cisco itself created. *See* Composite Exhibit G.

40. One example configuration is the Catalyst 2960L switch running version 15.2(6)E2b software. When a Precision SFP transceiver is inserted and the "service unsupported-transceiver" command is employed, the switch returns an "invalid input" error. Thus, for at least this configuration, the "service unsupported-transceiver" command does not function and the Precision SFP transceiver is not functional. Below is an image from a logfile generated when testing this device:

```
Switch(config)#service unsupported-transceiver
                                     ^
% Invalid input detected at '^' marker.
```

41. When the Required Codes are utilized in the Precision SFP transceiver inserted into the Catalyst 2960L switch running version 15.2(6)E2b, the software functions normally with full diagnostics available.

42. Diagnostic monitoring is defined and governed by the SFF-8472 specification. *See* Exhibit A at 26-40.

43. When diagnostics are disabled, network operators (*i.e.*, Precision's and Cisco's mutual customers) do not get any warnings or other feedback related to the operation of their network.

44. Across the breadth of Cisco devices, device variants, and software versions, there are any number of features and functions that are disabled. For example, after using the undocumented and hidden "service unsupported-transceiver" command with a Cisco ASR 1002 router running software version 15.1(1)S2, the router reports that, because the transceiver "is not a Cisco supplied component … no monitoring or diagnostic support or compatibility evaluation is possible."

```
CSCO-ASR1002-2#sh hw-module subslot 0/0 transceiver 1 status
The transceiver in slot 0 subslot 0 port 1
  is not a Cisco supplied component. In the current configuration
  third party transceivers are serviced when system resources
  are available.
  The transceiver has been enabled but no monitoring or
  diagnostic support or compatibility evaluation is possible.
```

45. Digital optical monitoring and diagnostic alarms are important features that enable customers to monitor and regulate their network.

46. The ASR 1002 router running the same software with the same, non-Cisco SFP transceiver inserted, returns no errors and functions normally when the Required Codes are used, demonstrating that the use of the Required Codes is essential to the use and purpose of the ASR 1002 router and the SFP transceiver and affects the quality, and usefulness to the customer, of the router and transceiver.

47. Cisco has itself tied compatibility and usability of SFP transceivers to the use of the Required Codes. To the extent this causes any confusion, it is confusion of Cisco's own making and not based on consumer confusion.

48. In its February 9, 2024 letter, Cisco demanded that Precision provide confirmation that it had "[ceased] its unauthorized use" of the Required Codes in just five business days. *See* Exhibit F.

49. Counsel for Precision replied to Cisco's February 9, 2024 letter via email correspondence on February 15, 2024 that Precision was in receipt of the letter and confirming that Precision would endeavor to give its full response by March 15, 2024. In response, counsel for Cisco questioned Precision's good faith efforts to respond to the February 9, 2024 letter, to which counsel for Precision explained in its email response sent on February 16, 2024 that an adequate response would take time due to the technical nature of the present issues, as evidenced by the fact that Cisco delayed five months in responding to Precision's September 6, 2023 letter. Attached hereto as Exhibit H is a true and correct copy of counsels' email correspondences up to February 16, 2024.[1]

50. Following the emails in Exhibit H, Cisco again questioned Precision's good faith efforts and implemented an arbitrary deadline for Precision's response. On February 18, 2024, counsel for Cisco re-alleged that Precision was infringing on Cisco's alleged trademark rights to the Required Codes, and confirmed that Cisco would seek legal action, including a preliminary injunction, against Precision. Attached hereto as Exhibit I is a true and correct copy of counsels' email correspondences on February 18, 2024.

51. Cisco's decision to tie the available features of the router and/or transceiver to the Required Codes places Precision at a non-reputation-related disadvantage.

52. Cisco's accusations of infringement and unfair business practice set out in Cisco's June 7, 2023 letter are without basis because Cisco owns no trademark rights in the Required Codes on which to base these claims.

---

[1] For clarification, Precision notes that counsel's email sent on February 16, 2024 misdates Precision's September 6, 2023 letter as September 6, 2024.

53. Cisco's accusations of infringement and unfair business practice set out in Cisco's June 7, 2023 letter are without basis because consumers are not likely to be confused by Precision's use of the Required Codes. The Precision Marks are continuously used on all of its products and clearly identify such goods are genuine Precision-branded products.

54. Based on the foregoing, a justiciable controversy exists between Precision and Cisco as to whether Precision's conduct constitutes a violation under the Lanham Act or unfair business practice under New York law.

55. In view of Cisco's threats and allegations, Precision needs, and is entitled to, a judicial declaration that its conduct does not violate Cisco's alleged trademark rights in the Required Codes and that it does not violate unfair business practice under New York law. Absent a declaration to this effect, Cisco will continue to wrongfully allege that Precision's Goods advertised or sold under the Precision Marks violate Cisco's alleged trademark rights, thereby causing Precision irreparable injury and damage.

## CAUSES OF ACTION

## COUNT I - DECLARATORY JUDGMENT

56. Plaintiff repeats and realleges paragraphs 1 through 55 hereof, as if fully set forth herein.

57. Precision is under direct threat of suit.

58. As a result of the acts described in the preceding paragraphs, there exists an actual and justiciable case and controversy between the parties as to whether Precision has infringed Cisco's alleged trademark rights in the Required Codes.

59. Declaratory judgment that Precision has not infringed, and is not infringing, Cisco's alleged trademark rights in the Required Codes is appropriate.

60. There exists an actual and justiciable case and controversy between the parties as to whether Cisco's Required Codes have acquired secondary meaning.

61. Declaratory judgment that Cisco's Required Codes have not acquired secondary meaning is appropriate.

62. There exists an actual and justiciable case and controversy between the parties as to whether the Required Codes are functional.

63. Declaratory judgment that the Required Codes are functional is appropriate.

64. There exists an actual and justiciable case and controversy between the parties as to whether Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products causes consumer confusion with Cisco-branded products.

65. Declaratory judgment that Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products does not cause consumer confusion with Cisco-branded products is appropriate.

66. There exists an actual and justiciable case and controversy between the parties as to whether Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products dilutes Cisco's alleged trademarks, if dilution is even a viable cause of action.

67. Declaratory judgment that Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products does not dilute Cisco's trademarks is appropriate.

68. There exists an actual and justiciable case and controversy between the parties as to whether Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products tarnishes Cisco's alleged trademarks, if tarnishment is even a viable cause of action.

69. Declaratory judgment that Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products does not tarnish Cisco's alleged trademarks is appropriate.

70. There exists an actual and justiciable case and controversy between the parties as to whether Precision has unfairly competed under Federal law with Cisco.

71. Declaratory judgment that Precision has not unfairly competed under Federal law with Cisco is appropriate.

72. There exists an actual and justiciable case and controversy between the parties as to whether Precision's alleged conduct constitutes willful infringement of any rights of Cisco.

73. Declaratory judgment that Precision has not willfully infringed on any rights of Cisco is appropriate.

74. As a result of the acts described in the preceding paragraphs, there exists an actual and justiciable case and controversy between the parties as to whether Precision has engaged in unfair business practices in violation of New York General Business Law § 349.

75. Declaratory judgment that Precision has not engaged in, and is not engaging in, unfair business practices in violation of New York General Business Law § 349 is appropriate.

76. Precision is entitled to a declaratory judgment that the Required Codes are functional and have not acquired secondary meaning, and that Precision's functional, non-trademark use of the Required Codes in connection with its transceiver products does not infringe, either directly or indirectly, dilute, or tarnish any purported trademark rights of Cisco, does not mislead, does not unfairly compete, and does not result in any likelihood of consumer confusion under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a). Additionally, Precision is entitled to a

declaratory judgment that it has not engaged in unfair business practices in violation of New York General Business Law § 349.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Precision respectfully requests that the Court grant the following relief:

A. Render judgment in favor of Plaintiff and against Defendants

B. Declare that Plaintiff has not violated, and is not violating, any rights of Cisco under the Lanham Act;

C. Declare that Plaintiff has not violated, and is not violating, New York General Business Law § 349;

D. Restraining and enjoining Cisco and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them from alleging, representing, or otherwise stating that Plaintiff's use of the Required Codes violates any rights of Defendant under the Lanham Act or is unlawful under New York General Business Law § 349;

E. Declare Plaintiff the prevailing party and this case as exceptional, and awarding Plaintiff its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

F. Award Plaintiff all fees, expenses, and costs associated with this action; and

G. Award such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Precision Optical Technologies, Inc. hereby demands a trial by jury as to all issues properly so tried.

Dated: New York, New York
March 1, 2024

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: /s/ Janet M. MacLeod

Janet M. MacLeod
101 Park Avenue
17th Floor
New York, New York 10017
Telephone: 212.878.7900
Fax: 212.692.0940

Ryan North Miller (*admission pending*)
2000 Market Street
20th Floor
Philadelphia, PA 19103
Telephone: 215.299.2000
Fax: 215.299.2150

Of counsel:

Patricia M. Flanagan (*pro hac vice forthcoming*)
Camila Chediak (*pro hac vice forthcoming*)
777 S. Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401
Telephone: 561.835.9600
Fax: 561.835.9602

*Attorneys for Precision Optical Technology, Inc.*